COUN**X**EL

*2222 S. Dobson Rd Suite 1104*
*Mesa, Arizona 85202*
*Office: (480) 536-6122*
*www.counxel.com*
**For Court Use Only: docketing@counxel.com**
Patrick Welsh (035861)
PWelsh@counxel.com
Timothy F. Coons (031208)
TCoons@counxel.com
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Amanda Gallegos, an individual, | Case No: |
| Plaintiff, | **VERIFIED COMPLAINT** |
| vs. | |
| Robert Lyle Agnew, an individual; John or Jane Doe Agnew, his spouse; Fusion Galaxy LLC, an Arizona limited liability company; Byhotr, LLC, a Wyoming limited liability company; Galaxy Eco Cleaners LLC, an Arizona limited liability company; Prime Executive Services, LLC, an Arizona limited liability company | |
| Defendants. | |

Plaintiff Amanda Gallegos ("Ms. Gallegos"), by and through undersigned counsel, hereby alleges as follows:

## PRELIMINARY STATEMENT

1.      This is an action for unpaid minimum wages, overtime wages, liquidated damages, attorneys' fees, costs, and interest under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*; unpaid minimum wage under the Arizona Minimum

Wage Act ("AMWA"), Arizona Revised Statutes ("A.R.S.") Title 23, Chapter 2, Article 8; and unpaid wages under the Arizona Wage Act ("AWA"), A.R.S. Title 23, Chapter 2, Article 7.

2. The FLSA was enacted "to protect all covered workers from substandard wages and oppressive working hours." *Barrentine v. Ark Best Freight Sys. Inc.*, 450 U.S. 728, 739 (1981). Under the FLSA, employers must pay all non-exempt employees a minimum wage of pay for all time spent working during their regular 40-hour workweeks. *See* 29 U.S.C. § 206(a). Under the FLSA, employers must pay all nonexempt employees an overtime premium of one and one-half times their regular rates of pay for all time spent working in excess of 40 hours in a given workweek. *See* 29 U.S.C. § 207(a).

3. The AMWA, A.R.S § 23-363, *et seq.*, establishes a minimum wage within the State of Arizona.

4. The AWA, A.R.S. § 23-350, *et seq.*, establishes standards for wage payments to employees within the State of Arizona.

## PARTIES, JURISDICTION, AND VENUE

5. Ms. Gallegos was at all times relevant herein a resident of Maricopa County, Arizona.

6. Defendant Robert Lyle Agnew ("Mr. Agnew") was at all times relevant herein, a resident of Maricopa County, State of Arizona.

7. On or before February 17, 2014, Mr. Agnew created The JER 17.7 ESV Revocable Living Trust (the "Jeremiah Trust"), an Arizona living revocable trust.

8. Upon information and belief, Mr. Agnew is the grantor of the Jeremiah Trust.

9. Upon information and belief, Mr. Agnew is a trustee of the Jeremiah Trust.

10. Upon information and belief, Mr. Agnew is a beneficiary of the Jeremiah Trust.

2

COUNXEL
LEGAL FIRM

11.     Defendant Fusion Galaxy LLC ("Fusion Galaxy") is an Arizona limited liability company doing business in and around Maricopa County, Arizona.

12.     The Jeremiah Trust was at all times relevant herein the sole member of Fusion Galaxy.

13.     Defendant Byhotr, LLC ("Byhotr") is a Wyoming limited liability company doing business in and around Maricopa County, Arizona.

14.     Upon information and belief, Mr. Agnew was at all times relevant herein the sole member of Byhotr.

15.     Defendant Galaxy Eco Cleaners LLC ("Galaxy Eco Cleaners") is an Arizona limited liability company doing business in and around Maricopa County, Arizona.

16.     Byhotr was at all times relevant herein the sole member of Galaxy Eco Cleaners.

17.     Defendant Prime Executive Services, LLC ("Prime", and, together with Fusion Galaxy, Byhotr, and Galaxy Eco Cleaners, "Defendant Companies") is an Arizona limited liability company doing business in and around Maricopa County, Arizona.

18.     Byhotr was at all times relevant herein the sole member of Prime.

19.     At all times relevant herein, Defendant Companies do business, have offices, and/or maintain agents for the transaction of its customary business in Maricopa County, Arizona.

20.     Under the FLSA, Defendant Companies are employers. The FLSA defines "employer" as any person who acts directly or indirectly in the interest of an employer in relation to an employee. At all relevant times, Defendant Companies had the authority to hire and fire employees, supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records in connection with Plaintiff's employment with Defendant Companies. As

1    persons who acted in the interest of Defendants in relation to the Defendant Companies'

2    employees, Defendant Companies are subject to liability under the FLSA.

3        21.    Mr. Agnew and Defendant John or Jane Doe Agnew are, upon information

4    and belief, husband and wife. They have caused events to take place giving rise to the

5    claims in this Verified Complaint as to which their marital community is fully liable. Mr.

6    Agnew and Jane Doe Agnew are owners of Defendant Companies and were at all relevant

7    times Ms. Gallegos' employer as defined by the FLSA, 29 U.S.C. § 203(d).

8        22.    Under the FLSA, Mr. Agnew and John or Jane Doe Agnew are employers.

9    The FLSA defines "employer" as any person who acts directly or indirectly in the interest

10   of an employer in relation to an employee. At all relevant times, Mr. Agnew and John or

11   Jane Doe Agnew had the authority to hire and fire employees, supervised and controlled

12   work schedules or the conditions of employment, determined the rate and method of

13   payment, and maintained employment records in connection with Plaintiff's employment

14   with Defendants. As persons who acted in the interest of Defendants in relation to the

15   company's employees, Mr. Agnew and John or Jane Doe Agnew are subject to individual

16   liability under the FLSA.

17       23.    Twila Consulting & Management Professional LLC ("Twila") is a

18   Wyoming limited liability company.

19       24.    Ms. Gallegos was at all times relevant herein the sole member of Twila.

20       25.    All acts, agreements, and contracts hereinafter alleged were to be

21   substantially performed, and completed in Maricopa County, Arizona.

22       26.    Plaintiff is further informed, believes, and therefore alleges that each of the

23   Defendants herein gave consent to, ratified, and authorized the acts of all other

24   Defendants, as alleged herein.

25       27.    Defendants, and each of them, are sued in both their individual and

26   corporate capacities.

COUNXEL
LEGAL FIRM

28.     Defendants are jointly and severally liable for the injuries and damages sustained by Plaintiff.

29.     At all relevant times, Plaintiff was an "employee" of Defendants as defined by the FLSA, 29 U.S.C. § 201, *et seq.*

30.     The provisions set forth in the FLSA, 29 U.S.C. § 201, *et seq.*, apply to Defendants.

31.     At all relevant times, Defendants were and continue to be "employers" as defined by the FLSA, 29 U.S.C. § 201, *et seq.*

32.     The provisions set forth in the A.R.S. Title 23, Articles 7 and 8 apply to Defendants.

33.     At all relevant times, Plaintiff was an "employee" of Defendants as defined by A.R.S. § 23-362.

34.     At all relevant times, Defendants were and continue to be "employers" of Plaintiff as defined by A.R.S. § 23-362.

35.     Defendants individually and/or through an enterprise or agent, directed and exercised control over Plaintiff's work and wages at all relevant times.

36.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201, *et seq.*, because this civil action arises under the Constitution and law of the United States. This Court also has subject matter jurisdiction pursuant 28 U.S.C. § 1367 because the state-law claims asserted herein are so related to claims in this action over which this Court has subject matter jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

37.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) because acts giving rise to the claims of Plaintiff occurred within the District of Arizona, and Defendants regularly conduct business in and have engaged in the wrongful conduct alleged herein—and, thus, are subject to personal jurisdiction in—this judicial district.

COUNXEL
LEGAL FIRM

1

## **GENERAL ALLEGATIONS**

2   38. Plaintiff hereby repeats and realleges each and every allegation contained in

3 the preceding paragraphs as if fully set forth herein.

4   39. Ms. Gallegos started working at Fusion Galaxy in 2017 as a front counter

5 tagger.

6   40. Fusion Galaxy paid Ms. Gallegos on a monthly basis at all relevant times

7 herein.

8   41. In or around December 2018, Mr. Agnew promoted her to manager of the

9 store and promised to pay her an hourly wage of $12.50 an hour. From that point on, Ms.

10 Gallegos worked, on average, 126 hours a week.

11   42. Ms. Gallegos soon realized that she was not being paid for all hours worked

12 and she was being paid far less than what she was owed under her employment contract.

13   43. Ms. Gallegos approached Mr. Agnew in or around January 2019, and many

14 times after that, about her underpayments. Mr. Agnew answered that Fusion Galaxy

15 lacked sufficient funds to pay her.

16   44. In or around December 2019, Ms. Gallegos again approached Mr. Agnew

17 about her missing wages. In response, Mr. Agnew offered to make Ms. Gallegos co-

18 owner of Fusion Galaxy in return for a monthly salary of $2,400. Ms. Gallegos accepted

19 the offer.

20   45. However, Mr. Agnew never made Ms. Gallegos a co-owner. Though

21 Fusion Galaxy began paying her a monthly salary in lieu of hourly wages, she remained

22 an employee.

23   46. From December 2019 onward, Ms. Gallegos ran all operations at each of

24 the business locations, including cleaning, payroll, third-party contracts, employee

25 management and human resources, and social media and marketing, while Mr. Agnew

26 ran the companies' finances and taxes.

47.     In or around March 2022, Ms. Gallegos began working for Byhotr.

48.     In or around May 2022, Ms. Gallegos began working for Galaxy Eco Cleaners, running all of its operations with substantially similar duties as Fusion Galaxy.

49.     In or around March 2022, Ms. Gallegos began working for Prime.

50.     In or around early 2022, Mr. Agnew instructed Ms. Gallegos to create Twila to receive her salary from Fusion Galaxy.

51.     Defendant then stopped paying Ms. Gallegos directly and began paying Twila.

52.     Mr. Agnew told Ms. Gallegos that those payments were periodic distributions of profits of the businesses. However, those payments were not distributions at all because Mr. Agnew never made Ms. Gallegos a co-owner.

53.     Because Defendants paid Ms. Gallegos as an independent contractor the same amount she had been paid as an employee, she now pays more in taxes and has been cheated out of employee benefits, including health insurance coverage, unemployment insurance benefits and worker's compensation, all for Defendants' benefit.

54.     Paying Ms. Gallegos through Twila serves no purpose other than to maintain a complicated, yet thinly veiled, pretense to misclassify Ms. Gallegos's employment status and to defer responsibility for the expenses, costs, and liabilities of a full-time employee as set forth above.

55.     On or around September 17, 2022, Ms. Gallegos attempted to assert her co-ownership over Fusion Galaxy, only to discover Mr. Agnew had never made her a co-owner at all.

56.     However, Ms. Gallegos continued to work and run day-to-day operations at all locations and fulfill her obligations as an employee.

57.     From April 12, 2019, until May 31, 2022, Fusion Galaxy paid Ms. Gallegos $2,400 on a monthly basis, which is $583.85 for each workweek.

58.     From June 1, 2022, until November 3, 2022, Fusion Galaxy failed to pay Ms. Gallegos any wages.

59.     On November 4, 2022, Fusion Galaxy paid Ms. Gallegos $1,598.

60.     From June 1, 2022, until September 30, 2022, Galaxy Eco Cleaners paid Twila $3,500 on a monthly basis. On October 6, 2022, Galaxy Eco Cleaners paid Twila $1,750. Galaxy Eco Cleaners has failed to pay Ms. Gallegos directly as an employee.

61.     From March 29, 2022, until the filing of this Verified Complaint, Byhotr has failed to pay Ms. Gallegos any wages.

62.     From October 21, 2022, until the filing of this Verified Complaint, Galaxy Eco Cleaners has failed to pay Ms. Gallegos any wages.

63.     From March 29, 2022, until the filing of this Verified Complaint, Prime has failed to pay Ms. Gallegos any wages.

64.     On September 28, 2022, Ms. Gallegos's attorneys notified Mr. Agnew of her position as co-owner, her right to unpaid wages, and the possibility of a lawsuit which gives rise to this Verified Complaint if he did not accede to her demands.

65.     On October 18, 2022, Mr. Agnew filed for an injunction against workplace harassment (the "Injunction") against her, wrongfully abusing a legal mechanism and misusing the injunction as a means to prevent Ms. Gallegos from entering the work sites, contact co-workers, and establish a case under this lawsuit.

66.     The Injunction was dismissed on October 26, 2022.

## COUNT ONE

### Fair Labor Standards Act – Minimum Wage

67.     Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as though full set forth herein.

68.     As set forth above, Ms. Gallegos was an employee of Defendants.

69.     Upon information and belief, for each workweek from April 12, 2019,

8

1    through November 4, 2022, Fusion Galaxy paid Ms. Gallegos only $553.85.

2    70.    Furthermore, Fusion Galaxy failed to pay Ms. Gallegos at all for the

3    workweeks of June 1, 2022, through November 4, 2022.

4    71.    Byhotr has failed to pay Ms. Gallegos any wages for her employment in any

5    workweek for the period of March 29, 2022, through November 4, 2022.

6    72.    Galaxy Eco Cleaners has failed to pay any wages to Ms. Gallegos for her

7    employment in any workweek for the period of October 21, 2022, through November 4,

8    2022.

9    73.    Prime has failed to pay any wages to Ms. Gallegos for her employment in

10   any workweek for the period of March 29, 2022, through May 2022.

11   74.    Over the course of her employment, Ms. Gallegos had repeatedly notified

12   Defendants of the underpayments, the nonpayments, and their obligations to pay her per

13   state and federal law, but Defendants ignored her complaints.

14   75.    Defendants willfully violated 29 U.S.C. § 201, *et seq.*, by failing to pay Ms.

15   Gallegos a minimum wage.

16   76.    Ms. Gallegos has been damaged by Defendant's failure to pay a minimum

17   wage in an amount to be proved at trial.

18   77.    Thus, Ms. Gallegos may recover for their violation of 29 U.S.C. § 201, *et*

19   *seq*.

20                              **<u>COUNT TWO</u>**

21                     **Fair Labor Standards Act – Overtime Wage**

22   78.    Plaintiff incorporates by reference each and every allegation contained in the

23   preceding paragraphs as though full set forth herein.

24   79.    Over the course of her employment, Ms. Gallegos had repeatedly notified

25   Defendants of the underpayments, the nonpayments, and their obligation to pay her, but

26   those Defendants ignored her complaints.

80.    Defendants willfully violated 29 U.S.C. § 201, *et seq.*, by failing to pay at least 1.5 times Ms. Gallegos' regular rate of pay for all time worked in excess of 40 hours in one workweek.

81.    Ms. Gallegos has been damaged by Defendants' failure to pay overtime wages in an amount to be proved at trial.

82.    Thus, Ms. Gallegos may recover for their violation 29 U.S.C. § 201, *et seq.*

**COUNT THREE**

**Fair Labor Standards Act – Retaliation**

83.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

84.    As set forth above, Ms. Gallegos repeatedly notified Defendants of the underpayments, nonpayments, and their obligation to pay her, but those Defendants ignored her complaints.

85.    Ms. Gallegos notified Defendants in writing on September 28, 2022, that they owe her wages, thereby asserting her rights under 29 U.S.C. § 215(a)(3).

86.    On October 18, 2022, Defendants filed for, and obtained, the Injunction against Ms. Gallegos.

87.    Defendants' stated reason for the Injunction was that Ms. Gallegos abuses and harasses co-workers and creates an intolerable and dangerous environment for those co-workers.

88.    Defendants' stated reason for the Injunction was merely a pretext to avoid liability under 29 U.S.C. § 215(a)(3).

89.    Ms. Gallegos has been damaged by Defendants' retaliation in an amount to be proven at trial.

90.    Thus, Ms. Gallegos may recover from Defendants for their retaliation.

**COUNT FOUR**

COUNXEL
LEGAL FIRM

**Arizona Minimum Wage Act – Minimum Wage**

91.     Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

92.     Defendants' failure to pay wages as set out above in this Verified Complaint violates A.R.S. § 23-363 by failing to pay Ms. Gallegos even a minimum wage as required under Arizona law.

93.     Over the course of her employment, Ms. Gallegos had repeatedly notified Defendants of the underpayment, the nonpayments, and their obligation to pay her, but the companies ignored her complaints.

94.     Ms. Gallegos has been damaged by this violation in an amount to be proved at trial.

95.     Thus, Ms. Gallegos may recover from Defendants for willful violation of A.R.S. § 23-363.

## COUNT FIVE

### Arizona Minimum Wage Act – Retaliation

96.     Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

97.     Ms. Gallegos complained of Defendants' failure to pay her wages.

98.     Defendants took out an Injunction against Ms. Gallegos in retaliation for her complaint 20 calendar days later.

99.     By Defendants filing for an Injunction less than 90 days after Ms. Gallegos reported a violation of A.R.S. § 23-363, retaliation under A.R.S. § 23-364 (B) is presumed.

100.     Defendants violated A.R.S. § 23-364 (B) and retaliated against Ms. Gallegos.

101.     Defendants' stated reason for the Injunction was a pretext to avoid liability under A.R.S. § 23-363.

102.     Ms. Gallegos has been damaged by this violation in an amount to be proved

at trial.

103.    Thus, Ms. Gallegos may recover from Defendants for violation of A.R.S. § 23-364.

<u>**COUNT SIX**</u>

**Arizona Wage Act – Failure to Pay Wages Due and Owing**

104.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

105.    As a result of the allegations contained herein, Defendants did not compensate Ms. Gallegos wages due and owing to her.

106.    Defendants engaged in such conduct in direct violation of A.R.S. § 23-350.

107.    As such, unpaid wages for such time Ms. Gallegos worked are owed to Ms. Gallegos for the workweeks she was employed by Defendants and not paid.

108.    Defendants knew that—or acted with reckless disregard as to whether—their refusal or failure to properly compensate Ms. Gallegos over the course of her employment would violate federal and state law, and Defendants were aware of the Arizona Wage Act's requirements during Ms. Gallegos' employment. As such, Defendants' conduct constitutes a willful violation of the Arizona Wage Act.

109.    Ms. Gallegos is therefore entitled to compensation for her unpaid wages at an hourly rate, to be proven at trial, in an amount that is treble the amount of her unpaid wages, plus interest thereon, and her costs incurred.

<u>**COUNT SEVEN**</u>

**Unjust Enrichment**

110.    Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

111.    In the alternative, if any of the claims in Count One through Six of this Verified Complaint is found to be unenforceable, Defendants have been wrongfully

1    enriched to the detriment of Ms. Gallegos.

2    112.    Ms. Gallegos has been impoverished as a direct and proximate result of the

3    actions of Defendants.

4    113.    There is a direct connection between Defendants' enrichment and Ms.

5    Gallegos' impoverishment.

6    114.    There is no lawful justification for the enrichment and impoverishment.

7    115.    Ms. Gallegos has no other legal remedy than this Verified Complaint to

8    redress the harm.

9    116.    Ms. Gallegos has been damaged by Defendants in an amount to be proved at

10   trial.

11   117.    Thus, Ms. Gallegos may recover for Defendants' unjust enrichment.

12   ## COUNT EIGHT

13   **Fraudulent Misrepresentation/Fraudulent Inducement**

14   118.    Plaintiff incorporates by reference each and every allegation contained in the

15   preceding paragraphs as though fully set forth herein.

16   119.    As set forth above, Mr. Agnew and Fusion Galaxy made express and/or

17   implied representations that Ms. Gallegos would be a co-owner in Fusion Galaxy.

18   120.    Mr. Agnew and Fusion Galaxy told Ms. Gallegos that she was a co-owner

19   and held her out to be a co-owner to others.

20   121.    In reliance upon the representations, Ms. Gallegos accepted a salaried

21   position with Fusion Galaxy.

22   122.    Additionally, Mr. Agnew and Fusion Galaxy made express and/or implied

23   representations that Ms. Gallegos could receive her share of distributions in Fusion Galaxy.

24   123.    Mr. Agnew and Fusion Galaxy instructed Ms. Gallegos that the way to

25   receive those distributions was to create a limited liability company.

26   124.    In reliance upon the representations and instructions, Ms. Gallegos created

COUNXEL
LEGAL FIRM

Twila.

125.    Those representations, set forth above, were false.

126.    Defendants made the representations knowing them to be false or with reckless disregard as to their truth or falsity, with the intent to fraudulently induce Ms. Gallegos to rely on them by accepting a salary in lieu of hourly wages, by not pressing her claim for underpayment and/or nonpayment of wages, and by creating a limited liability company for payment.

127.    Defendants' representations were material to Ms. Gallegos' decisions to accept a salary, not to further complain about her underpaid or unpaid wages, and to create Twila. But for Defendants' misrepresentations, Ms. Gallegos would not have made and carried out those decisions.

128.    Ms. Gallegos reasonably and justifiably relied on Defendants' representations in making and carrying out those decisions.

129.    Ms. Gallegos did not know those representations were false and had no reasonably independent means of ascertaining their truth or falsity.

130.    As a result of the representations and instructions, Defendants significantly and unlawfully reduced their expenses, costs, and liabilities.

131.    Defendants damaged Ms. Gallegos by deception, leading her to believe she was a rightful co-owner in the companies.

132.    Defendants damaged Ms. Gallegos by misclassifying her employment status by instructing her to be paid through a limited liability company, effectively making her an independent contractor, even though Defendants have no legal right to do so.

133.    As a direct and proximate cause of Defendants' fraudulent misrepresentations and fraudulent inducements, Ms. Gallegos has sustained damages in an amount to be proved at trial.

134.    Defendants' conduct was intentional, malicious, and performed with reckless

indifference to Ms. Gallegos' rights and evidences an evil mind thereby justifying an award of punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A.     For all damages as permitted by law, including, but not limited to compensatory, incidental, statutory, liquidated, nominal, general, consequential, punitive, and any other damages.

B.     Compensation for unpaid minimum wages, compensation for unpaid overtime wages, an additional amount equal amount as liquidated damages, interest, and reasonable attorneys' fees and costs of this action under 29 U.S.C. § 216(b).

C.     Compensation for unpaid wages, an additional amount equal to twice the unpaid minimum wages as liquidated damages, interest, and reasonable attorneys' fees and costs of this action under A.R.S § 23-363.

D.     Compensation for her unpaid wages at an hourly rate in an amount that is treble the amount of her unpaid wages, plus interest thereon, and her costs incurred under A.R.S. § 23-355.

E.     For an award that is treble her unpaid wages pursuant to A.R.S. § 23-355.

F.     For pre- and post-judgment interest at the highest rate allowed by law from the earliest time permitted by law until the judgment is paid in full.

G.     For all remedies as permitted in equity including injunctions, accountings, specific performance, and any other equitable remedies allowed by law.

H.     Attorneys' fees and costs.

I.     For such other and further relief as may be just and proper in law and equity.

## **JURY TRIAL DEMAND**

Ms. Gallegos hereby demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED this 11th day of November, 2022.

**COUNXEL LEGAL FIRM**

_____

Patrick Welsh
2222 S. Dobson Rd. Suite 1104
Mesa, AZ  85202
*Attorney for Ms. Gallegos*

16

## **VERIFICATION**

I, Plaintiff Amanda Gallegos, declare under penalty of perjury that I have read the foregoing Verified Complaint and am familiar with the contents thereof. The matters asserted therein are true and based on my personal knowledge, except as to those matters stated upon information and belief, and as to those matters, I believe them to be true.

_Amanda Gallegos_   11/8/2022
Amanda Gallegos

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 11, 2022, I electronically transmitted the attached document to the Clerk's office using the CM/ECF System for filing.

*/s/ Holly Estes*